**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**ESTHER SALAS**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING<br>COURTHOUSE<br>50 WALNUT ST.<br>ROOM 5076<br>NEWARK, NJ 07101<br>973-297-4887 |

January 10, 2022

**LETTER OPINION**

    Re:    ***H.D. & N.R., on behalf of themselves and their minor child, N.D., v. West Orange Board of Education***
           <u>**Civil Action No. 19-18943 (ES) (CLW)**</u>

Dear parties:

Before the Court is Defendant West Orange Board of Education's (the "District") motion for summary judgment. (D.E. No. 63). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, the Courts GRANTS the District's motion.

**I.    BACKGROUND**[1]

Plaintiffs H.D. and N.R. are the parents of minor child N.D. N.D. is a student enrolled in West Orange Public Schools, and he is eligible for special education and related services under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Over the span of several years, and on behalf of N.D., Plaintiffs filed four due process petitions in the New Jersey Office of Administrative Law ("NJ OAL"). For each petition, Plaintiffs were represented by counsel.

The four petitions claimed, among other things, that the District proposed an individualized education program ("IEP") that would not provide N.D. with a free and appropriate public education ("FAPE"), as required under the IDEA. The first petition challenged the proposed IEP for the 2016-17 school year; the second petition for the 2017-18 school year; the third petition for the 2018-19 school year; and the fourth petition for the 2019-20 school year. The challenged IEPs were identical in that they would place N.D. in a language and learning disabilities ("LLD") classroom for all major academic subjects. The first two petitions were consolidated; the third and fourth were not.

---

[1]     The Court gathers the facts primarily from the District's statement of facts (D.E. No. 63-9 at 5–11 ("Def.'s SOF")); Plaintiffs' answer (D.E. No. 64 at 9–11 ("Pls.' Answer")); Plaintiffs' statement of facts (D.E. No. 64 at 12–20 ("Pls.' SOF")); and the District's response (D.E. No. 65 at 5–18 ("Def.'s Resp.")). The Court also relies on the continuously paginated record submitted by the District. (D.E. Nos. 64-3–64-7 ("R.")).

    Neither party submitted their statements of fact and responses as separate documents, in violation of Local Civil Rule 56.1(a). Instead, they appended their statements and responses to their briefs. When citing to the portion of those documents consisting of the substantive briefing, the Court will refer to the District's moving brief as "Mov. Br.", Plaintiffs' opposition brief as "Opp. Br.", and the District's reply as "Reply."

While the first three petitions were pending, but before the fourth petition was actually filed, N.D. remained in the educational placement he was in before Plaintiffs filed the first petition. (Def.'s SOF ¶ 5; Pls.' Answer ¶ 5). The parties dispute the parameters of that placement. The District maintains that the placement "was a self-contained English Language Arts class, a pull-out resource replacement Mathematics class, and general education for his other classes." (Def.'s SOF ¶ 3). N.D.'s parents generally admit to that placement but add that "N.D. was attending a Primary-Autistic classroom (multi-grade classroom) for English Language arts" from around 2014 to September 2019 even though he was never "diagnosed as autistic" and even though they were unaware of that placement. (Pls.' Answer ¶ 3). However, because nothing turns on this dispute, the Court will hereinafter refer to that placement as the "general education placement" or the "stay put placement."

N.D. remained in the general education placement pursuant to 20 U.S.C. § 1415(j), which imposes what is known as the "stay put" rule. *See Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 863–64 (3d Cir. 1996). The stay put rule, which the Supreme Court has described as "unequivocal," requires the school district to keep a child in the child's then-current educational placement "during the pendency of any proceedings initiated under the [IDEA], unless the state or local educational agency and the parents or guardian of a disabled child otherwise agree." *Honig v. Doe*, 484 U.S. 305, 323 (1988). The stay put rule "functions, in essence, as an automatic preliminary injunction." *Drinker*, 78 F.3d at 864.

On June 28, 2019, the Administrative Law Judge ("ALJ") decided the consolidated petitions—the first two petitions—holding that the proposed IEPs for the 2016-17 and 2017-18 school years, which proposed placing N.D. in an LLD classroom, "would provide N.D. with a free and appropriate education." (Def.'s SOF ¶¶ 12–13; Pls.' Answer ¶¶ 12–13). From the date of the ALJ's decision, Plaintiffs had 90 days—until September 26, 2019—to challenge the ALJ's decision in a civil action in federal or state court. *See* § 1415(i)(2)(B). As discussed more below, Plaintiffs never did so. However, their third petition challenging the IEP for the 2018-19 school year was still pending.

On August 27, 2018, the District proposed an IEP for the 2019-20 school year, which would also place N.D. in the LLD classroom. (Def.'s SOF ¶ 16; Pls.' Answer ¶ 16). On September 4, 2019, the District implemented the IEP for the 2019-20 school year, removing N.D. from his general education placement and placing N.D. in the LLD classroom. (Def.'s SOF ¶ 17; Pls.' Answer ¶ 17). This change occurred before Plaintiffs' right to challenge the ALJ's decision denying their consolidated petitions expired, and before the ALJ decided their third petition. On September 9, 2019, Plaintiffs filed their fourth petition, challenging the proposed IEP for the 2019-20 school year. (Def.'s SOF ¶ 18; Pls.' Answer ¶ 18).

On September 20, 2019, Plaintiffs filed an emergent motion in the NJ OAL, seeking an order declaring that the District violated the IDEA by unilaterally changing N.D.'s stay put placement while the third petition was pending and compelling the District to return N.D. to the general education placement, which he was in before the ALJ decided the two consolidated petitions. (Def.'s SOF ¶ 18; Pls.' Answer ¶ 18; *see also* R. 188). They also sought an order compelling the District immediately to convene an IEP meeting. (R. 188). They argued that the

District's change—moving N.D. from his general education placement to the LLD classroom—violated the IDEA because their third petition was still pending. (*Id.* at 189). Plaintiffs also argued they were entitled to emergent relief because N.D. would suffer irreparable harm in the absence of such relief, N.D.'s legal rights were well-settled, they were likely to succeed on the merits challenging the unilateral placement, and the equities tipped in their favor. (R. at 191–92).

On October 1, 2019, the ALJ denied their emergent motion. (Def.'s SOF ¶ 24; Pls.' Answer ¶ 24; *see also* R. 462–66). The ALJ reasoned that, while "[t]he right to stay-put is well settled," the present situation was "not the typical stay put" because she had "rendered a final decision stating that the LLD placement in all academic subjects was appropriate" for the 2016-17 and 2017-18 school years. (R. 465). After finding the stay put rule's automatic injunction did not apply, the ALJ next concluded that Plaintiffs were not entitled to emergent relief under N.J.A.C. 6A:3-1.6(b), which requires the movant to show irreparable harm, a settled legal right, a likelihood of success on the merits, and the balancing of the equities and interests tipping in the movant's favor. (*Id.*). The ALJ found that N.D. would not suffer irreparable harm because she had previously concluded that "the LLD placement for all academic subjects" would provide N.D. a FAPE under the IEPs for the 2016-17 and 2017-18 school years. (*Id.*). The ALJ declined to address the likelihood of success in challenging the IEP for the 2018-19 school year because the proceedings concerning the third petition had not concluded. (*Id.*). Finally, the ALJ repeated that the right to stay put in this context was not settled, and that Plaintiffs did not show that the equities and interests tipped in their favor. (*Id.*).

On October 11, 2019, still represented by counsel, Plaintiffs filed the instant civil action in federal court on behalf of themselves and N.D. (D.E. No. 1, Complaint ("Compl.")). Their Complaint sought injunctive relief returning N.D. to his general education placement, a remand to the ALJ for proceedings consistent with the requested injunctive relief, an award of attorneys' fees and costs, and an award of such other relief that the Court deems equitable and just. (*Id.* at 11).

On December 19, 2019, the ALJ denied Plaintiffs' third petition, holding that the proposed IEP for the 2018-19 school year would provide N.D. with a FAPE. (Def.'s SOF ¶¶ 30–31; Pls.' Answer ¶¶ 30–31). From that date, Plaintiffs had 90 days—until March 18, 2020—to challenge the ALJ's decision in a civil action in federal or state court. *See* § 1415(i)(2)(B). As discussed more below, Plaintiffs never did so. However, their fourth petition challenging the IEP for the 2019-20 school year is still pending.

On April 7, 2020, Plaintiffs' counsel moved to withdraw as counsel for Plaintiffs. (D.E. No. 13). On April 9, 2020, the Honorable Cathy L. Waldor, United States Magistrate Judge, granted the motion. (D.E. No. 17). Since then, Plaintiffs have proceeded *pro se*.[2]

---

[2] Plaintiffs may proceed *pro se* to vindicate their own rights under the IDEA because "parents undoubtedly have substantive rights under the IDEA that they may enforce by prosecuting claims brought under that statute on their own behalf." *Chambers ex rel. Chambers v. Sch. Dist. Of Philadelphia Bd Of Educ.*, 587 F.3d 176, 183 (3d Cir. 2009) (citing *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 531 (2007)). In *Winkelman*, the Supreme Court left open the question "whether [the] IDEA entitles parents to litigate *their child's claims pro se*." 550 U.S. at 535 (emphasis added). However, the Third Circuit has "answered that question in the negative." *See Chambers*, 587 F.3d at 183 n.9 (citing *Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225 (3d Cir. 1998), *abrogated on other grounds by Winkelman*, 550 U.S. 516). Thus, to the extent Plaintiffs continue to pursue their stay put claim on behalf of N.D., they do not have standing to do so, but they may pursue claims on their own behalf. *See R.B. v.*

3

The District moves for summary judgment. (D.E. No. 63).

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when—in viewing the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmovant—a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of establishing that no "genuine issue" of facts exists. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996).

## III. DISCUSSION

The Court begins by emphasizing additional context concerning the scope of this dispute, then shifts to addressing Plaintiffs' separate theories of relief.

***Scope of this Dispute***: As noted above, since the filing of the instant civil action, Plaintiffs have not filed another civil action challenging the ALJ's decision denying their first, second, and third petitions—and their right to do so has expired. Nor have they attempted to amend their Complaint to pursue such a challenge.

Plaintiffs claim otherwise, arguing that they have challenged the ALJ's decisions concerning the three petitions in this civil action. (Pls.' Answer ¶¶ 15 & 52). However, they provide no evidence supporting that claim. And their Complaint—filed by counsel—is captioned, "**INTERLOCUTORY APPEAL**"; asserts one count of "Violation of Stay Put"; and is accompanied with the ALJ's decision denying emergent relief, but not with the ALJ's decision denying their consolidated petitions. (Compl. at 1, 8 & Ex. A). Further, Plaintiffs filed their Complaint on October 11, 2019, after the time to challenge the ALJ's decision denying their consolidated petitions expired. *See* § 1415(i)(2)(B). Because Plaintiffs cannot amend their Complaint in opposition to summary judgment, the Court focuses its inquiry on whether the District violated the stay put rule. *See, e.g.*, *Jones v. Treece*, 774 F. App'x 65, 67 (3d Cir. 2019) ("Jones is correct that a *pro se* litigant's pleadings are liberally construed. But liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint." (cleaned up)).

Moreover, because Plaintiffs never challenged the ALJ's decisions, those decisions are "final" pursuant to the IDEA. *See* § 1415(i)(1)(B); *see also D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 275 (3d Cir. 2014) ("In situations where neither party appeals, that administrative decision becomes 'final and binding under the IDEA' and, as a result, nothing is left to be

---

*Mastery Charter Sch.*, 532 F. App'x 136, 137 n.1 (3d Cir. 2013) ("Ms. Ballard is not permitted to represent R.B. because parents may not represent their children in IDEA cases in federal court."); *Woodruff v. Hamilton Twp. Pub. Sch.*, 305 F. App'x 833, 836 n.2 (3d Cir. 2009) ("Because the Woodruffs are not attorneys, they may not represent B.W. on appeal. Therefore, they are proceeding on appeal only as to their claims." (internal citation omitted)).

4

exhausted administratively." (quoting *Porter v. Bd. of Trustees of Manhattan Beach Unified Sch. Dist.*, 307 F.3d 1064, 1069 (9th Cir. 2002))).

*Plaintiffs' Theories of Relief*: Plaintiffs appear to pursue two theories under which the District allegedly violated the stay put rule. The first theory is that the stay put rule requires the District to keep N.D. in his original placement while at least one of their several petitions are pending even if their other petitions were denied by the ALJ and reached finality. (Pls.' SOF ¶¶ 40, 42 & 47). If that theory is correct, then N.D. should be in the general education placement—because, as of this writing, Plaintiffs' fourth petition remains pending. The second theory is that the District violated the stay put rule by changing N.D.'s placement too early—before their right to challenge the ALJ's decision denying their consolidated petitions expired. (Pls.' SOF ¶ 50; *see also* Opp. Br. at 21). For substantially similar reasons, the Court rejects the first theory on the merits and the second theory as moot.

*Multiple-Pending-Petitions Theory*: The Court disagrees with Plaintiffs' multiple-pending-petitions theory—that the stay put rule requires the District to keep N.D. in his original placement while at least one of their several petitions are pending even if their other petitions were denied by the ALJ and reached finality. The District's obligation to keep N.D. in the general education placement—the stay put placement—lasted "until a *new placement* [wa]s established by either an actual agreement between the parents and the District, or *by an administrative decision upholding the District's proposed placement which [Plaintiffs] choose not to appeal*, or by a court." *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 484 (2d Cir. 2002) (quoting *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 86 F. Supp. 2d 354, 366 (S.D.N.Y. 2000), *aff'd*, 297 F.3d 195 (2d Cir. 2002)) (emphasis added); *see also Gabel ex rel. L.G. v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*, 368 F. Supp. 2d 313, 324 (S.D.N.Y. 2005) (same); *cf. Drinker*, 78 F.3d at 866 ("assum[ing] without deciding that the district court properly concluded that the underlying placement dispute was resolved when the Drinkers did not appeal Dr. Redfern's decision"). Indeed, Congress codified the stay put rule "to strip schools of the *unilateral* authority they had traditionally employed to exclude disabled students . . . from school," *Honig*, 484 U.S. at 323 (emphasis in original), understanding "that a child with a disability is best served by maintaining her educational status quo *until the disagreement over her IEP is resolved*," *Rena C. v. Colonial Sch. Dist.*, 890 F.3d 404, 416 (3d Cir. 2018) (quoting *M.R. v. Ridley School Dist.*, 744 F.3d 112, 118 (3d Cir. 2014)) (emphasis added). Those goals are consistent with permitting a school district to change the placement of a child after an ALJ's decision deeming that placement appropriate reaches finality. Therefore, Plaintiffs' failure to appeal the ALJ's decision on their consolidated petitions established a new placement for N.D., and the District was entitled to transfer N.D. into that placement. And the District did just that: the IEP for the 2019-20 school year—which placed N.D. in the LLD classroom for all major academic subjects—was identical to the IEPs approved by the ALJ and unchallenged by Plaintiffs in a civil action.

*Too Early Theory*: As noted, Plaintiffs' "too early" theory is that the District unlawfully changed N.D.'s placement before their right to challenge the ALJ's decision denying their consolidated petitions expired. But that theory of relief is moot. Importantly, Plaintiffs have sought only injunctive relief—an order returning N.D. to the general education placement. *Cf. Moynihan v. West Chester Area Sch. Dist.*, 813 F. App'x 825, 827 (3d Cir. 2020) (request for injunctive relief mooted by child's graduation); *J.T. ex rel. J.T. v. Newark Bd. of Educ.*, 564 F. App'x 677, 680 (3d Cir. 2014) (same). And the stay put rule provides *pendente lite* relief, which

5

means its relief lasts only during litigation. *See People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 232 (3d Cir. 2008) (explaining "that 'stay put' orders . . . merely serve to maintain the status quo pendente lite" (citing, *inter alia*, *J.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 272–73 (3d Cir. 2002))). Thus, Plaintiffs' requested relief could only last while the dispute challenging the first petition remained pending. And because that dispute is no longer pending—as discussed above, *see* § 1415(i)(1)(B); *D.E.*, 765 F.3d at 275—the Court cannot order N.D.'s return to the general education placement on the basis that the District transferred N.D. too early. Indeed, "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." *Cty. of Morris v. Nationalist Movement*, 273 F.3d 527, 533 (3d Cir. 2001) (quoting *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698–99 (3d Cir. 1996)).[3]

## IV.   CONCLUSION

For the above stated reasons, the Court GRANTS the District's motion for summary judgment. (D.E. No. 63). An appropriate Order will be entered.

Dated: January 10, 2022

/s/Esther Salas
Esther Salas, U.S.D.J.

---

[3] Plaintiffs' theory that the District moved N.D. too early would not be moot if they sought compensatory relief for the alleged stay put violation. *See Moynihan*, 813 F. App'x at 827. However, despite being represented by counsel when they filed this civil action, they did not seek such relief in their Complaint. *See J.T.*, 564 F. App'x at 681; *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 597 (7th Cir. 2006). It was not until the last page of their brief in opposition to summary judgment that they requested "[a]n award of tutoring, [p]rivate therap[y], third party evaluations, and related costs . . . to Plaintiffs." (Opp. Br. at 24). Notably, that quoted portion of their opposition brief is all they dedicate to the issue. Because Plaintiffs cannot amend their Complaint in opposition to summary judgment, the Court does not consider their vague claim for compensatory relief. *See, e.g.*, *Jones*, 774 F. App'x at 67.